UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 2: 10-007-DCR |
| | ) | Civil Action No. 2: 12-7247-DCR-CJS |
| V. | ) | |
| | ) | |
| VIRDELL HICKS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

*** *** *** ***

Defendant/Movant Virdell Hicks has moved the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 34]  More specifically, Hicks seeks to have his thirty-month term of incarceration reduced.  He also asks that this Court direct that his period of incarceration run concurrent with another sentence that was subsequently imposed by the United States District Court for the Southern District of Ohio.  As grounds for his motion, Hicks contends that his trial attorney was ineffective.  However, after reviewing the materials filed by the parties[1], the Court concludes that Hicks's arguments and assertions are without merit. Therefore, his motion will be denied and this collateral proceeding will be dismissed.

**I.**

On February 11, 2010, a federal grand jury returned a one-count indictment charging Defendant Hicks with violating 18 U.S.C. § 912.  More specifically, the indictment alleged that,

---

[1]     Hicks's reply to the United States' response was received this date. [Record No. 45]  Although outside the time for filing a reply, it has been fully considered by the Court.

on or about January 21, 2010, Hicks "falsely assume[d] and pretend[ed] to be . . . a Special

Agent of the United States Secret Service investigating certain persons arrested by local law

enforcement . . ." [Record No. 1]  Hicks assumed this false identity to seek the release of a

coconspirator being held by local law enforcement.  The details of the offense were aptly

summarized by the government during Hicks' plea hearing.

> The defendant, on the evening of January 21st, 2010, three times represented
> himself to be an agent of the United States Secret Service.  He did so first to an
> Officer Jeff Nagy, a local police officer who was present on the scene at the
> Kroger's location in Erlanger, Kentucky.  He did so subsequently to a Sergeant
> Doug Eagler of the Erlanger Police Department in a conversation that was
> subsequently made.  He did so finally, . . . in a conversation with a pretrial officer,
> Yanel Robinson, made subsequently that evening.   On each occasion, the
> defendant represented that he was one Steve Schwartz of the United States Secret
> Service.  There is, in fact, a Steve Schwartz of the United States Secret Service
> who's a supervisor in the Cincinnati field office.
>
> Additionally, . . . ultimately the attempt – the request that was made on each of
> those occasions, which was for the release, more or less of two suspects in local
> counterfeiting check operations, the request being that they be released, ultimately
> while not successful, per se, generally the plan was successful in that one of those
> individuals who had been arrested was released on a low bond, a bond that was
> lowered based on, in reliance on, the defendant's representation that he was
> Steven Schwartz.  She was a key party to an ongoing investigation.

[Record No. 30, at p. 15-16]

## A.    The April 26, 2010, Rearraignment Hearing

Hicks was re-arraigned on April 26, 2010.[2]  After being placed under oath, the defendant

was questioned by the Court and found competent to enter a guilty plea. [Record No. 30, at p.

---

[2]    The defendant entered a guilty plea to the single count indictment without a written plea agreement.
During the April 26, 2010 hearing, Hicks confirmed that no promises had been made to him by the United
States in exchange for his guilty plea.  Likewise, he confirmed that no threats or force – either direct or
indirect – had been applied to induce his change of plea.  [Record No. 30, p. 7]

3] During questioning, Hicks stated that he had not been promised or told that he would receive a specific sentence in exchange for entering a plea of guilty. [*Id.*, at p. 7] The Court specifically advised Hicks that it could impose up to the maximum statutory penalty at the time of sentencing.  The undersigned explained that "[t]he statutory penalties . . . would be a term of incarceration of not more than three years, a term of supervised release of not more than one year.  Also, the Court could impose a fine of up to $250,000, and there's a special assessment of $100 that would be applied to your case." [*Id.*, at p. 8]  Further, the Court specifically advised the defendant that, until the Presentence Investigation Report ("PSR") had been prepared and any objections resolved, neither the attorneys nor the Court would be able to determine the exact guideline range to be applied in his case. [*Id.*, at p. 9]

Hicks also confirmed that he understood that the Court would consider all relevant factors contained in 18 U.S.C. §3553 in imposing a sentence in his case.

> THE COURT:  . . . [I]n addition to the Sentencing Guidelines, there are a number of statutory factors that courts consider in imposing sentences.  They're contained in Title 18, Section 3553 of the United States Code.  Let me take just a moment to go through some of those factors.
>
> They include the nature and the circumstances of the offense, as well as the history and characteristics of the person that's to be sentenced.  The Court will also consider the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law, and to provide a just punishment for the offense.  The Court will also consider whether there's a need to protect the public from any future crimes of the defendant, and the Court will consider the deterrent effect that the sentence would have.  Another factor that the Court often considers is whether a particular defendant needs any type of educational or vocational training, any medical care or treatment or treatment for any addictions that might be present, such as an addiction to drugs or alcohol.
>
> And do you understand that those are all factors that the Court can consider in imposing a sentence?

THE DEFENDANT: Yes, sir.

[*Id.*, at p. 10]

After the Court reviewed the charge contained in the indictment, Hicks explained what

he had done to be guilty of that charge.

THE DEFENDANT: I gave a false pretense of saying that I was an agent of the United States Secret Service.

THE COURT: Did you do that on or about the date that's charged, which is January 21st of this year?

THE DEFENDANT: Yes, sir.

THE COURT: And did one or more of your actions take place in Kenton County, which is in the Eastern District of Kentucky?

THE DEFENDANT: Yes, sir.

At that time, you said that you assumed or that you gave the impression that you were a special agent of the Secret Service.  Did you do that – make that representation to a local law enforcement officer?

THE DEFENDANT: Yes, I did, sir.

THE COURT: And was that in an attempt to have someone released or to have a lower bond given to that person?

THE DEFENDANT: Yes, sir.

THE COURT: Is it your intention to enter a plea of guilty to this charge because you are, in fact, guilty of what has been charged in the indictment?

THE DEFENDANT: Yes sir.[3]

[*Id.*, at p. 13-14]

---

[3]     A defendant's "solemn declaration of guilt carries a presumption of truthfulness."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Out of an abundance of caution, the Assistant United States Attorney ("AUSA") then provided additional details regarding the defendant's actions. [*Id.*, at p. 15-16] Defendant Hicks did not contest the factual summary provided by the AUSA. Instead, he confirmed his belief that, if the matter were to proceed to trial, the United States would be able to prove the facts to a jury beyond a reasonable doubt. [*Id.*, at p. 16]

### B.      The August 9, 2010, Sentencing Hearing

On July 30, 2010, Hicks's attorney filed a Sentencing Memorandum, citing relevant authorities and factual information for the Court's consideration. [Record No. 17]  Shortly thereafter, the United States filed a Sentencing Memorandum and Motion for Upward Variance. [Record No. 18]  The United States' pleadings focused on the relevant sentencing factors of 18 U.S.C. § 3553.  Consistent with its position throughout the case, the AUSA requested a sentence of imprisonment of 36 months, arguing that anything less would be insufficient to deter the defendant from committing similar offenses in the future and would not accomplish other relevant statutory goals. And after reviewing Hicks's PSR, the Court filed a Notice pursuant to Rule 32(h) of the Federal Rules of Criminal Procedure for the purpose of advising the parties that it was considering an upward departure from the United States Sentencing Guidelines under Sections 4A1.3 (inadequate criminal history) and 5K2.0(a)(2) and (3) (circumstances of a kind not adequately taken into consideration by the sentencing guidelines and that are present to a degree not adequately taken into consideration by the sentencing guidelines). [Record No. 19]

The sentencing hearing was held on August 9, 2010.  At the outset of this hearing, the Court asked the parties whether there were any issues to be addressed concerning Hicks's earlier

-5-

correspondence.[4]  Counsel confirmed that there were no issues to be addressed.  Additionally,

Hicks confirmed that he had reviewed and discussed his PSR with his attorney and that he was

prepared to proceed. [Record No. 31, at pp. 2-3] The Court then directed the attorneys to respond

to the Notice previously filed regarding possible upward departures under the United States

Sentencing Guidelines.  Thus, Hicks's attorney did not have the option of ignoring the extent and

nature of the defendant's prior criminal conduct.

     While the United States chose to view the matters as supporting a variance, the AUSA

agreed that an upward departure would also be appropriate under the circumstances presented.

[*Id.*, at pp. 4-5] Conversely, Hicks's counsel argued that the defendant's Criminal History

Category VI adequately accounted for the defendant's prior criminal conduct and that a

departure was neither warranted nor necessary.  Further, Hicks's attorney asserted that a

departure under Section 5K2.0 of the United States Sentencing Guidelines would not be

appropriate.  [*Id.*, at pp. 5-6]  And although the Court determined that both departures were

warranted, that decision was not based on any improper arguments by or concessions of Hicks's

counsel.

     The nature and extent of Hicks's criminal history is summarized as follows at pages 9-10

of the transcript of the sentencing hearing.

> [THE COURT:]  In this particular case, Mr. Hicks started committing crimes
> when he was 12 years old; theft, theft-related offenses, in violation of court
> orders, and that continued, as reflected in paragraph 34 of the presentence report,
> throughout his time as a juvenile.  He was committing an aggravating burglary at
> age 16, as reflected in paragraph 50 in the presentence report.  So his 19 juvenile

---

[4]     See discussion at fn. 8 below.

offenses are not counted, but it does indicate a continuous pattern of criminal history involving the same type of offenses.

And then once becoming an adult, he has at least – well, he has four convictions that are not counted because of age, but there again, they're similar in nature; forgery, receiving stolen property, another forgery conviction, a weapons charge, and also receiving stolen property, and then a theft charge and possession of criminal tools. So that takes us through I think age 28.

And then his first criminal history point is assessed for a conviction at age 29, which is passing counterfeit notes, and that's a federal conviction. He then has some other forgery offenses at age 30 and 32; theft offense at age 34; a drug possession at age 35; theft and breaking and entering also at age 35; and receiving stolen property as well, and then a second federal conviction, counterfeiting conviction, at age 35 as well. So he's assessed 17 points and he has the two-point addition, for a total of 19 points. And those all occur, with one exception, with the first federal conviction, during his 30s.

And so it would appear that based on the nature of those particular offenses that one could easily conclude that the defendant is likely to commit additional offenses and that his Criminal History VI is substantially [under]represented, both in terms of the seriousness of his criminal history, as well as the likelihood that he would commit other offenses.

[*Id.*, at pp. 9-10]

During allocution, the AUSA summarized the arguments contained in the government's Sentencing Memorandum and Motion for Upward Variance. In relevant part, counsel commented that, in approximately five years while prosecuting white collar crimes, he had not seen a criminal record that rivaled the defendant's. [*Id.*, at p. 18] Again, as a result of this focus, Hicks's attorney was required to address the defendant's prior crimes.

After asserting that the Court should not accept the government's argument and additional time to the defendant's sentence for the same conduct used to increase his guideline range, attorney Neff addressed Hicks's extensive criminal history. He stated:

> Through this case I have been nothing [but] honest with Mr. Hicks. When I saw his criminal history, I might be wrong, this might be a close call, but this might be the worst I've ever seen as far as the number of entries on a rap sheet. That's something I can't change. I can't help him with, and we have to deal with it.

[Record No. 31, at pp. 21-22] Attorney Neff then proceeded to argue that the Court had taken his criminal history into account in its earlier determination to increase his guideline range under USSG §4A1.3(a). Further, he noted that two of Hicks's criminal history points were due to the fact that he was under supervision for another offense at the time he impersonated the secret service agent in this matter. And Neff pointed to the knowledge of the Secret Service agents in their discussions with him. [*Id.*, at pp. 22-23] After reserving his earlier objections under *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004), counsel noted that the defendant had accepted responsibility for his actions and had entered a guilty plea with no expectation of leniency from the government. Instead, he chose to plead guilty and took responsibility for his actions. [Record No. 31, at p. 23]

Hicks's comments to the Court mirrored several made by his attorney. While noting that he could not change his criminal history, he stated that he intended to change and that his prior pattern of conduct was not useful.

### C.    Hick's Direct Appeal of His Sentence

Following entry of the Judgment, Hicks filed a Notice of Appeal with the United States Court of Appeals for the Sixth Circuit on August 16, 2010. [Record No. 23] However, on December 19, 2011, the Sixth Circuit affirmed the sentence and rejected Hicks's arguments that this Court erred in imposing upward departures under U.S.S.G. §§ 4A1.3 and 5K2.0. As the appellate court explained,

[T]he district court properly applied an upward departure under USSG 5K2.0. The district court concluded that Hicks's conduct in this case was outside the heartland of conduct contemplated by the base offense level applicable to Hicks's crime, USSG § 2J1.4(c)(1), because he misrepresented himself as a Secret Service agent on three separate occasions in an effort to have a coconspirator who could have implicated him released. Even though USSG § 2J1.4(c)(1) provides that the guideline for attempt to commit an underlying offense applies where the impersonation was to facilitate another offense, Hicks impersonated a Secret Service agent in an attempt to conceal his involvement in the counterfeit check conspiracy, and not to facilitate the crime. USSG § 5K2.9, on the other hand, encourages an upward departure where "the defendant committed the offense in order to facilitate or conceal the commission of another offense." Under the circumstances, the district court correctly concluded that an upward departure was warranted under either USSG § 5K2.0 or USSG § 5K2.9. Accordingly, the district court did not abuse its discretion in applying a three-level upward departure. *See O'Georgia*, 569 F.3d. at 295.

[Record No. 32, at p. 2-3]

In concluding that an upward departure for understated criminal history was appropriate, the Sixth Circuit noted that Hicks's nineteen criminal history points "easily exceeded the thirteen needed to place him in the highest criminal history category." [*Id.*, at p. 3] Further, the defendant's criminal history included nineteen uncounted juvenile offenses which continued into his adulthood until Hicks's first counted conviction for counterfeiting at age twenty-nine.

## II.

To obtain habeas relief under 28 U.S.C. § 2255, Hicks must allege and prove by a preponderance of evidence that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003), *cert. denied*, 540 U.S. (2004); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Additionally, a defendant may not use a §

2255 motion to re-litigate an issue that was raised and considered on appeal, absent highly exceptional circumstances such as an intervening change in the law. *Stephan v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974), *cert. denied*, 423 U.S. 861 (1975). However, as a general rule, ineffective assistance of counsel claims are not cognizable on direct appeal because the record is usually not adequate to permit appellate review. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

When asserting a claim of ineffective assistance of counsel, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d. 959, 964 (6th Cir. 2006) (a movant must prove ineffective assistance of counsel by a preponderance of the evidence). To prove deficient performance, a movant must show that his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A movant may meet this burden by establishing that his attorney's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 687-88. Under this test, judicial scrutiny of the attorney's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. "Deficient performance" is constitutionally prejudicial only when the attorney's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

To prove prejudice, a movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. It must also be noted that, when evaluating the issue of prejudice, courts generally take into consideration the "totality of the evidence" presented to the decision maker *Id.* at 695. Where a claim of ineffective assistance follows a guilty plea, the movant must show that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

> **A.** **Hicks's Trial Attorney Was Not Ineffective In Providing Him With Advice Regarding The Possible Impact Of His Criminal History And Prior Convictions. Likewise, He Was Not Ineffective In Addressing These Issues During The Sentencing Hearing.**

Hicks argues that his trial counsel provided ineffective assistance by telling him that if proceeded to trial and lost, he would be risking a sentence outside the guideline range due to his extensive criminal history. Additionally, he claims that his attorney should not have commented upon the defendant's extensive criminal history during the sentencing hearing. According to Hicks, counsel's comments were prejudicial to him. In fact, Hicks claims that he received the statutory maximum sentence. However, as the record amply demonstrates, this last assertion is clearly erroneous.

But as an initial matter, the Court notes that there is nothing erroneous or ineffective in telling Hicks what was both *apparent* and extremely *relevant* to sentencing. Because Hicks had an extensive criminal history, his attorney acted entirely appropriately in alerting him to the obvious. Likewise, Hicks's attorney did not provide ineffective assistance by commenting on the defendant's criminal history during the sentencing hearing. As outlined above, prior to the

-11-

comments of Hicks's attorney, the Court had already advised the parties (*via* written notice and orally) that it was considering an upward departure based on the inadequate criminal history score contained in the defendant's PSR. In fact, the Court had determined that the guideline range would be increased to a range of 24 to 30 months' imprisonment. This increase was due, in large part, to Hicks's understated criminal history which greatly exceeded the maximum number of points required to place a defendant in Criminal History Category VI. Under the circumstances presented, counsel could not simply close his eyes to the obvious and hope that the Court would do the same.

Two points should be made regarding Hicks's second argument of a potential maximum sentence. First, a thirty-six month sentence was justified and was not out of the realm of reason based on the defendant's conduct and his criminal history. Thus, it was not erroneous for Hicks's counsel to alert him to that possibility.[5] Second, although the AUSA argued for a thirty-six month sentence, *a maximum sentence of imprisonment was not imposed by the Court*. Instead, the Court imposed a sentence of thirty months – six months *less* than the statutory maximum.

---

[5]     In any event, it is well-settled that "a defense attorney's erroneous calculations and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea." *United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993); *see United States v. Stephens*, 906 F.2d 251, 253-54 (6th Cir. 1990); *see also Gonzalez v. United States*, 33 F.3d 1047, 1051-52 (9th Cir. 1994) ("The district court informed [the defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel's] representation of him. As a result, [he] cannot claim he was prejudiced by [counsel's] alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) ("[Defendant's] attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel. Further [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court." (internal citation omitted)).

In his reply, Hicks seems to concede that he was not sentenced to the statutory maximum term available.  However, he asserts that his counsel was ineffective for advising him to enter a guilty plea so that he could receive a two-level reduction to his offense level calculation.  Hicks assert that this was ineffective because he could have gone to trial and still received this two-level reduction. [Record No. 45, p. 2] This assertion is factually incorrect.  In fact, the Court stated during sentencing that his entry of an early plea was the basis for not imposing a sentence of 36 months as the government had requested.

In declining to impose a statutory maximum sentence, the Court explained,

> [T]he Court believes that the United States made some very strong arguments in favor of a variance to the statutory maximum.  However, if the Court were to impose the statutory maximum in this case, it would not reflect two important factors.  The defendant has admitted his conduct, the case did not go to trial, he entered a plea of guilty, and he has readily accepted and admitted his criminal behavior.  So for those reasons the Court believes that the Court should not go to the very top end of the statutory maximum in the case.  Again, the Court believes that [AUSA] Dusing's arguments are all made in good faith and have a very strong basis, but for those reasons, the Court is hesitant to go to the very top of the statutory maximum in this particular case.

[*Id.*, at p. 29]

After determining that certain upward adjustments to Hicks's guideline range were appropriate (*i.e.*, departures), the Court imposed a sentence at the upper end of the guideline range which was calculated as 24 to 30 months.  The Court found this sentence to be entirely appropriate in light of all of the relevant statutory factors outlined in 18 U.S.C. § 3553. [*Id.*, at p. 26-30] Considering the totality of circumstances in this case, the Court cannot conclude that, but for the alleged errors of Hicks's attorney, there is a reasonable probability that the results of

-13-

the proceeding would have been different.  However, as a preliminary matter, the Court concludes that attorney Neff did not provide ineffective assistance regarding this issue.

> **B.** **Hicks's Trial Counsel Was Not Ineffective For Failing to Request That His Sentence Be Imposed To Run Concurrent With A Yet-To-Be-Imposed Sentence In Another District.**

Hicks is also incorrect in asserting that his trial counsel was ineffective for failing to request that his sentence run concurrent with a not-yet-imposed sentence in the United States District Court for the Southern District of Ohio.[6]  Even if the parties has requested such relief, the undersigned would not have granted it.  Such a request would unduly diminish the serious nature of Hicks's conduct in this matter.  Thus, Hicks cannot demonstrate any prejudice in connection with this argument.  And this failure is fatal to his claim.  *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment.")

In the present case, the best Hicks could have hoped for was that the judge for the United States District Court for the Southern District of Ohio would direct that his sentence in that jurisdiction run concurrent with this Court's judgment.[7]  Again, however, it should be noted that,

---

[6]     Citing *United States v. Donoso*, 521 F.3d 144, 149 (2nd Cir. 2008), Hicks argues that this Court erred in directing that his sentence of 30 months imprisonment should run consecutive to any undischarged term of imprisonment.  However, in *Setser v. United States* 132 S.Ct. 1463 (2011), the United States Supreme Court held that a federal court has authority under 18 U.S.C. §3584(a) to direct that its sentence run consecutively to an anticipated state sentence.

[7]     Arguably, Hicks's argument for a concurrent sentence is made in the wrong jurisdiction.  Because he was sentenced in the Southern District of Ohio following entry of judgment in this case, he could have requested that the sentence imposed by that court be ordered to run concurrent, or partially concurrent, with this Court's sentence in accordance with USSG § 5G1.3.  Whether such an argument was made – or made and rejected – in his subsequent sentencing proceeding is not known to the undersigned.  During the August

-14-

due to the severity of Hicks's conduct in this district, if a request had been made for a concurrent sentence in connection with a yet-to-be-imposed sentence in another jurisdiction, the request would have been summarily denied.

### C.   Hicks Has Not Offered Any Evidence That His Trial Counsel Operated Under A Conflict Of Interest.

The guarantee of effective assistance of counsel includes representation free from any conflict-of-interest. *Strickland,* 466 U.S. at 688.  According to the defendant, his trial counsel had a conflict-of-interest in the present case due to his prior representation of a client against whom Hicks cooperated and testified.  However, his attorney was unaware of the former, alleged contact with Hicks until Hicks raised the issue while discussing the defendant's PSR.  According to his trial counsel,

> during a meeting to review the Pre-Sentence Report prepared in the matter, the Defendant advised [counsel] that he had been a cooperating witness against a former client of [the attorney] approximately 8 years earlier.  On approximately July 13, 2010, [attorney Neff] met with the Defendant and discussed the matter. At the conclusion of this meeting, the Defendant indicated that he did not want [counsel] to withdraw as his counsel.

[Record No. 41-1, at p. 2-3]  A letter dated July 14, 2010, attached to counsel's affidavit confirms this conversation. [Record No. 41-2, at p. 4]  The letter also confirms that Hicks did not wish to have attorney Neff withdraw as his counsel.  And in a subsequent letter from Hicks

---

9, 2010, hearing, the undersigned addressed this issue in the following manner:

> The Court also believes that it is appropriate to recommend that in the event that there is any undischarged criminal term, that this term of 30 months should be consecutive to any other undischarged terms. [This] Court is not aware of what the court in the Southern District of Ohio may do with respect to the pending charges, the Court can only address the issues that are present before it. . . .

[Record No. 31, p. 30]

to Neff immediately following the sentencing hearing, the defendant did not express any dissatisfaction with the representation he received. [*Id.*, at p. 7][8] Finally, during the sentencing hearing, Hicks did not express any dissatisfaction with his lawyer.[9]

Having considered the defendant's claims in light of all the information available to the Court, the Court concludes that Hicks has not shown that his attorney was required to make any choice during this matter that compromised either Hicks or the former client. Thus, under the circumstances, prejudice will not be assumed arising from the former representation. As the United States has correctly indicated in its response to Hicks's motion, prejudice is presumed only if the defendant is able to demonstrate that his attorney "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348-350 (1980).

Here, Hicks has failed to identify any specific instance to suggest that an actual conflict existed at any time relevant to this action. In short, there is absolutely no evidence that the

---

[8]     Prior to sentencing, Hicks forwarded several letters to the Court. The letters were received on or about July 6, 2010. Pursuant to this Court's practice, the letters were filed in the record. [*See* Record Nos. 15 and 16.] Chronologically, Hicks's first letter is addressed to Secret Service Agent Steven Schwartz. The second letter is addressed to a United States Probation Officer and concerns the facts of the case and a news reporter's request to interview the defendant regarding the matter. Hicks's third letter, dated June 23, 2010 is addressed to the undersigned and concerns the adequacy of his attorney's representation and possible meetings with government agents in an attempt to receive a motion for a downward reduction from the defendant's guideline range. Hicks's final letter is dated June 27, 2010, and relates to the defendant's concerns that the Boone County Detention Center was not forwarding his mail.

        After writing the June 23, 2010 letter, Hicks made no further complaints about his attorney. And at no time prior to sentencing did he ask the Court to appoint other counsel to represent him.

[9]     At the beginning of the sentencing hearing held on August 9, 2010, the Court specifically referenced Hicks's letters which it had directed to be filed under seal. It then asked if the defendant wished to addressed the contents of the correspondence before proceeding. The defendant declined this invitation. [Record No. 31, pp. 3-4]

defendant's attorney was required to make any choice between alternate courses of action that would have been helpful to one client and harmful to another. As the Sixth Circuit has held, a purely hypothetical conflict does not constitute ineffective assistance of counsel. *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citing *United States v. Hopkins*, 43 F.3d 1116, 1119 (6th Cir. 1995)). Thus, Hicks's claim of ineffective assistance of counsel fails.

### D.     Hicks's Argument That His Attorney Failed To Seek A Written Plea Agreement From The United States Is Factually Erroneous.

As the materials filed by the United States make clear, the government was unwilling to offer a written Plea Agreement in this case. At all times relevant to the parties' discussions and negotiations, the Assistant United States Attorney indicated an intention to advocate for the maximum statutory term of incarceration of 36 months. As this Court has previously indicated, it was not ineffective for Hicks's attorney to apprise him of this fact. Instead, it would have been inappropriate for contrary information to be provided.

Armed with this knowledge, the defendant chose to enter a plea of guilty rather than proceed to trial. This Court confirmed at the rearraignment hearing that, in making this decision, Hicks was fully-aware that he faced the maximum statutory penalties. At the same time, he did not surrender any of his appellate rights. Facing few options and substantial evidence against him, Hicks chose the only route that could provide him at least the possibility of a sentence of less than 36 months imprisonment. It was the nature of Hicks's crime and his prior criminal history – and not the action nor inactions of his attorney – that caused Hicks to receive a sentence of thirty months.

### E.      A Rule 20 Transfer Was Not Available To Hicks.

Under Rule 20 of the Federal Rules of Criminal Procedure, a case pending in another district may be transferred to the district where a defendant is arrested, held, or is present. However, there are two prerequisites for such a transfer.  First, the defendant must state in writing that he wishes to plead guilty or nolo contendere and waive trial in the district where the indictment or complaint is pending.  In this regard, the defendant must consent in writing to the court's disposing of the case in the transferee district and file such a statement in the transferee district.  Second, the United States attorneys *for both districts* must approve the transfer.

In the present case, while the possibility of a Rule 20 transfer was discussed by attorney Neff, the requisite consent was not obtained from the respective United States Attorneys for the Southern District of Ohio and the Eastern District of Kentucky.  As outlined in the affidavit of counsel filed in response to the defendant's § 2255 motion, the Assistant United States Attorney in this district advised Hicks's attorney that he would not consent to a transfer of this matter to the Southern District of Ohio. [Record No. 41-1, at pp. 2-3]  Thus, counsel cannot be held to be ineffective for failing to do something which he could not accomplish as a matter of law.[10]

Hicks is also incorrect in asserting that his attorney persuaded him to enter a guilty plea without the benefit of a written plea agreement.  As outlined in the April 23, 2010, letter from attorney Neff to the defendant, the AUSA prosecuting the case was unwilling to negotiate a written plea agreement. [Record No. 42-2]  However, notwithstanding that fact, the defendant

---

[10]      The affidavit of Darlene Hicks does not alter the Court's analysis of this issue.  While the defendant might have wanted the two federal cases to be consolidated, that determination was outside the control of Hicks and his attorney. [*See* Record No. 45; attached affidavit.]

indicated a desire to enter a guilty plea to the charge contained in the indictment.  This fact was confirmed during the subsequent re-arraignment hearing before the Court.

### III.

A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the requisite "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For dismissals on procedural grounds, the movant must demonstrate that  "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In the present case, Hicks has not made a substantial showing of a denial of a constitutional right. Likewise, he has not demonstrated that the issues he now seeks to raise are debatable among jurists of reason or that the questions presented are adequate to deserve encouragement to proceed further.  Finally, an evidentiary hearing is not needed to resolve any issue raised in the defendant's motion.  The record clearly demonstrates that there are no legitimate factual disputes which require such a hearing.

### IV.

A review of the file of this proceeding clearly establishes that Hicks's trial counsel was neither negligent nor ineffective in honestly addressing issues that concerned the Court, and in

doing so in a forthright manner.  Likewise, attorney Neff did not provide ineffective assistance regarding the defendant's remaining claims.  Based on the foregoing analysis and discussion of the issues raised in the defendant's motion, it is hereby

**ORDERED** as follows:

1.     Defendant/Movant Verdell Hicks's motion to vacate, set aside, or correct his sentence in accordance with 28 U.S.C. § 2255 [Record No. 34] is **DENIED**.  Judgment will be entered in favor of the United States with respect to all issue raised in this habeas proceeding.

2.     Defendant/Movant Verdell Hicks's habeas proceeding [Covington Civil Action No. 2: 12-7247-DCR-CJS] is **DISMISSED** and **STRICKEN** from the Court's docket.

3.     The Court **DECLINES** to issue a Certificate of Appealability on any issue raised herein.  Any request by Defendant/Movant Verdell Hicks for this Court to issue such a Certificate is **DENIED**.

This 15th day of February, 2013.



Signed By:

*Danny C. Reeves* DCR

United States District Judge